```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------X

United State of America,
                                              CR-97-456 (CPS)

    - against -                               MEMORANDUM OPINION
                                              AND ORDER
Steven Wavra,

                 Defendant.

----------------------------------------X
```

SIFTON, Senior Judge.

On July 16, 1997, defendant Steven Wavra pled guilty to one count of unlawful possession of ammunition by a convicted felon in violation of 18 U.S.C. §922(g)(1), § 924(a)(2), and on December 10, 1997, was sentenced to 90 months imprisonment, three years supervised release, and a $100 special assessment. Thereafter, pursuant to the DNA Analysis Backlog Elimination Act of 2000, 42 U.S.C. §§14135-14135(e) ("DNA Act"), as amended, defendant was notified in writing by the United States Department of Probation that he was required to submit a blood sample for DNA analysis pursuant to the DNA Act. On September 27, 2005, by letter to this Court, Wavra objected to this requirement on the ground that the DNA Act violates the Fourth Amendment. Accordingly, on November 2, 2005, this Court issued an order to show cause why defendant's position should not be adopted and the probation department's directive vacated. The Government opposed that relief. After the parties briefed the issues and oral argument was heard from both parties, a panel of the United

States Court of Appeals for the Second Circuit resolved the issue presented by this case when it held in *Nicholas v. Goord*, 430 F.3d 652 (2d Cir. 2005) that searches pursuant to New York's DNA statute, which is in all relevant respects essentially identical to the federal DNA Act, did not violate the Fourth Amendment. Thereafter, at the request of this Court, both sides submitted additional briefing on the impact of *Nicholas*.[1] Following *Nicholas*, and for the reasons set forth below the relief requested by the defendant is denied and the defendant is ordered to comply with the probation department's directive.

## BACKGROUND

The following facts are taken from the submissions of the parties in connection with the present motion. They are undisputed.

In April 1996 Wavra was arrested by New York City Police after he was discovered placing razor blades in the pages of books at the Brooklyn Public Library. A search incident to his arrest produced four rounds of .22 caliber ammunition in his shirt pocket as well as what appeared to be a homemade zip gun. Thereafter, a search of defendant's apartment revealed 93 more rounds of .22 caliber ammunition. On July 16, 1997, defendant

---

[1] Defense counsel implicitly concedes that *Nicholas v. Goord* controls and accordingly, that the federal DNA Act is constitutional. However, she argues that the Second Circuit improperly interpreted the relevant Supreme Court precedent, and requests that this Court delay issuing its opinion until the Court of Appeals has issued a decision as to whether the case will be reheard *en banc*.

Wavra pled guilty before Magistrate Judge Go to one count of unlawful possession of ammunition by a convicted felon[2] in violation of 18 U.S.C. §922(g)(1), §924(a)(2). On December 10, 1997, the defendant was sentenced to 90 months imprisonment, three years supervised release, and a $100 special assessment. On March 25, 2005 Wavra was released from custody and began his period of supervised release. Although no DNA collection statute existed at the time Wavra was sentenced, the DNA Act was enacted before his release. Subsequent to his release Wavra was directed by the Probation Department to submit a blood sample for DNA analysis pursuant to the Act. Wavra challenges the constitutionality of the Act under the Fourth Amendment.

DISCUSSION

The DNA Act

The DNA Act mandates the collection of DNA samples from any federal prisoner, parolee, or individual on probation or supervised release, "who is, or has been, convicted of a qualifying federal offense." 42 U.S.C. §§14135a(a)(1)-(2). When the DNA Act was originally enacted in 2000, it contained a limited number of qualifying offenses, not including unlawful possession of ammunition by a felon. However, the definition of a

---

[2] Defendant has two prior convictions. In February 1977 he was arrested and charged with threatening to blow up a United States Post Office. A Miami Florida district court sentenced him to 20 months for that offense. In November 1987 defendant was arrested and charged in the Eastern District of New York with assaulting a military police officer. He was sentenced to 100 months for that offense.

"qualifying offense" under the DNA Act was amended by the Justice for All Act of 2004, P.L. 108-405, 118 Stat. 2260 (Oct. 30, 2004) to include, "[a]ny felony." "Felony" is in turn defined by regulations promulgated by the Attorney General to include any offense for which the maximum term of imprisonment is more than one year. 28 C.F.R. §28.2(a)(2005). Defendant's conviction for unlawful possession of ammunition by a felon carried a maximum penalty of ten years in prison. See 18 U.S.C. §924(a)(2). Accordingly, defendant's conviction places him within the mandate of the DNA Act.

The DNA Act requires qualifying offenders to "cooperate in the collection of a DNA sample." 42 U.S.C. §14135c. Both the federal probation and supervised release statutes require such cooperation as a mandatory condition of supervision. See 18 U.S.C. §3563(a)(9), 3583(d). A qualifying offender who refuses to cooperate in the collection of a DNA sample is guilty of a Class A misdemeanor. 42 U.S.C. §14135a(a)(5)(A).

The DNA Act does not prescribe the method to be used for obtaining DNA samples from qualifying offenders, but rather defines DNA sample broadly as, "a tissue, fluid, or other bodily sample of an individual on which a DNA analysis can be carried out." 42 U.S.C. §14135(a)(c)(1). However, the FBI has requested that the probation department collect blood samples from qualifying offenders because "blood is easier to test and

preserve than hair, saliva, or skin cells." *U.S. v. Kincade*, 379 F.3d 813, 817 (9th Cir. 2004). After the DNA sample is collected by the probation department it is sent to the FBI for analysis and entry into the Combined DNA Index (or Identification) System ("CODIS"), a national database linking DNA evidence from federal, state, and local sources into a searchable computer network. *Id.* §14132(a), 14135(b), see H.R.Rep. No. 106-900(I)(Sept. 26, 2000), 2000 WL 1420163, at *26-27.

The DNA Act strictly limits the permissible uses of the DNA information in CODIS, almost exclusively to "law enforcement identification purposes." 42 U.S.C. §14132(b)(3). Accordingly, DNA testing may only be conducted on "junk DNA," that is, DNA which reveals no genetic information, but only provides a sufficient number of unique markers so as to match one DNA sample to another. H.R.Rep. 106-900, *27; *U.S. v. Kincade*, 379 F.3d 813, 818 (9th Cir. 2004). Improper disclosure of DNA samples or of the information contained in CODIS is prevented by confidentiality rules and by criminal sanctions for violations. 42 U.S.C §14135(e)(c). If an offender's qualifying conviction is overturned, the DNA Act directs the FBI to "promptly expunge" the offender's DNA information from CODIS. 42 U.S.C. §14132(d)(1)(A).

Although the DNA Act does not include a "purpose" section, the Act's legislative history demonstrates that its purpose is to solve crimes. 146 Cong. Rec. H8572-01, *H8575-6 ("The purpose of

this database is to match DNA samples from crime scenes where there are no suspects with the DNA of convicted offenders. Clearly, the more samples we have in the system, the greater the likelihood we will come up with matches and solve cases."); 146 Cong. Rec. S11645-02 (Dec. 6, 2000), at *S11646 ("Collection of convicted offender DNA is crucial to solving many of the crimes occurring in our communities.")(statement of Sen. Dewine); 150 Cong. Rec. H8175-05 (Oct. 6, 2004), at *H8176 (the Justice for All Act "makes DNA technology available to our criminal justice system in order to enhance its efficiency and certainty in exonerating the innocent as well as identifying and convicting the guilty." (statement of Rep. Hastings).

The Fourth Amendment:

The Fourth Amendment to the United States Constitution provides that, "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated . . ." The extraction of blood is a "search" within the meaning of the Fourth Amendment. *Skinner v. Ry Labor Executives' Ass'n*, 489 U.S. 602, 616-17 (1989)(holding that blood tests, breathalyzer tests, and the taking of urine constitute searches). The issue to be decided is the "reasonableness" of the search.

In the criminal context the reasonableness of a search is

established by the issuance of a warrant supported by probable cause. *Padgett v. Donald*, 401 F.3d 1273, 1277 (11th Cir. 2005). However, the Supreme Court has emphasized "the longstanding principle that neither a warrant nor probable cause, nor indeed any measure of individualized suspicion is an indispensable component of reasonableness in every circumstance." *Nat'l Treasury Employees Union v. Von Raab*, 489 U.S. 656, 665 (1989). The Supreme Court has upheld warrantless searches under a totality of the circumstances approach analyzing the relative strength of the relevant government and privacy interests, *U.S. v. Knights*, 534 U.S. 112 (2001), and under a "special needs" analysis, which first asks whether the government has some special need beyond the normal requirements of law enforcement and thereafter balances the strength of the relevant interests. *Griffen v. Wisconsin*, 483 U.S. 868 (1987).

It is now settled law in the Second Circuit that DNA indexing statutes must be analyzed under the special needs rubric because they constitute suspicionless searches. *Nicholas*, 430 F.3d at 667; *Roe v. Marcotte*, 193 F.3d 72 (2d Cir. 1999). Thus, a court must first determine "what the statute's primary purpose is, mindful that it is the statute's immediate rather than ultimate objective that is relevant," and whether such purpose serves a "special need." *Nicholas*, 430 F.3d at 667 (citing *Ferguson v. City of Charleston*, 532 U.S. 67, 82-83 (2001)). The

court must then conduct a "fact specific balancing of the intrusion on the . . . Fourth Amendment rights [of the persons searched] against the promotion of legitimate governmental interests." *Nicholas*, 430 F.3d at 669 (quoting *Board of Ed. v. Earls*, 536 U.S. 822, 830 (2002)).

The DNA Act's Primary Purpose

The purpose of a search constitutes a special need if it serves a purpose outside the normal requirements of law enforcement. *Griffen*, 483 U.S. 868. Thus, for example, the Supreme Court has recognized special needs as justifying permanent traffic checkpoints, whose purpose was to conduct brief stops and questioning in order to police the border, *Martinez-Fuerte,* 428 U.S. 543 (1976), random, suspicionless searches of students participating in extracurricular school activities, *Earls*, 536 U.S. 822, suspicionless drug testing of customs employees, *Nat'l Treasury*, 489 U.S. 656, and drug testing for railroad employees involved in train accidents, *Skinner,* 489 U.S. 602. An attempt to "determine that a particular individual has engaged in some specific wrongdoing," *Id.* (quoting *Report and Recommendation of the Magistrate Judge*, 2003 WL 256774 at *13) is a normal law enforcement purpose, while an "information seeking" search serves a special need. *Id.* at 667, (citing *Illinois v. Lidster*, 540 U.S. 422, 423 (2004) in which the court allowed suspicionless roadblocks whose purpose was, "not to determine

whether a vehicle's occupants were committing a crime, but to ask vehicle occupants, as members of the public, for their help in providing information about a crime in all likelihood committed by others.") Thus, the *Nicholas* court upheld the New York indexing statute explaining that, "[b]ecause the [governments's] purpose in conducting DNA indexing is distinct from the ordinary 'crime detection' activities associated with normal law enforcement concerns, it meets the special-needs threshold." *Nicholas*, 430 F.3d at 669.

In *Nicholas,* the Second Circuit examined the legislative history of the New York indexing statute in order to determine its purpose and concluded that its "primary purpose is to create a DNA database to assist in solving crimes." *Id.* at 668 (quoting *Report and Recommendation of the Magistrate Judge,* 2003 WL 256774, *12 (S.D.N.Y. 2003)). The court found it significant that the legislative history focused on crime solving and was, "devoid of references to identifying human remains and discouraging recidivism," *Nicholas*, 430 F.3d at 667, two other potential purposes of DNA indexing. Here too, the legislative history focuses on solving crimes and makes no mention of identifying human remains or discouraging recidivism. *See e.g.* 146 Cong. Rec. H8572-01, *H8575-6 ("The purpose of this database is to match DNA samples from crime scenes where there are no suspects with the DNA of convicted offenders. Clearly, the more samples we have in

the system, the greater the likelihood we will come up with matches and solve cases."); 146 Cong. Rec. S11645-02 (Dec. 6, 2000), at *S11646 ("Collection of convicted offender DNA is crucial to solving many of the crimes occurring in our communities.")(statement of Sen. Dewine); 150 Cong. Rec. H8175-05 (Oct. 6, 2004), at *H8176 (the Justice for All Act "makes DNA technology available to our criminal justice system in order to enhance its efficiency and certainty in exonerating the innocent as well as identifying and convicting the guilty." (statement of Rep. Hastings). Accordingly, the federal DNA Act also has the primary purpose of solving crimes.

Special Needs Balancing Test

Having determined that the primary purpose of the DNA Act constitutes a "special need" a court must next balance that need against the privacy intrusion in order to determine if the search is reasonable. The factors to be balanced in this case are essentially the same as the factors balanced by the Second Circuit in *Nicholas*. In both cases the government has a strong interest is in "obtaining identifying information from convicted offenders and keeping a record of such information." *Nicholas* 430 F.3d at 668; *See also, U.S. v. Sczubelek,* 402 F.3d 175, 185 (3d Cir. 2005)("The interest in accurate criminal investigations and prosecutions is a compelling interest that the DNA Act can reasonably be said to advance); *U.S. v. Kincade*, 379 F.3d 813,

838-39 (9th Cir. 2004)(the federal DNA Act serves "undeniably compelling government interests in identifying probationers who commit crimes once they are released from prison"); *Green v. Berge*, 354 F.3d 675, 679 (7th Cir. 2004)(Wisconsin's DNA statute "serves an important state interest" in permitting law enforcement to collect "the most reliable evidence of identification.)

Because the New York statute and the DNA Act have substantially similar provisions, the privacy intrusion is also the same. Both statutes concern convicted felons,[3] who as prisoners or probationers experience a decreased expectation of privacy. *Griffen,* 483 U.S. 868, *Knights,* 534 U.S. 112, *Marcotte,* 193 F.3d 72. In both cases, the DNA is obtained from a blood sample. While the drawing of blood is indisputably a search, *Skinner*, 489 U.S. at 624, the Supreme Court has held that it constitute a minimal invasion. *Id*. Both statutes contain similar provisions to minimize the intrusiveness of the search. Thus, under both statutes the DNA samples are analyzed using so-called "junk DNA," which so far as now known by science does not provide any usable genetic information. Both statutes limit the DNA index

---

[3] The New York statute applied only to certain categories of felons, whereas the federal statute applies to all felons. However, in *Nicholas*, the Second Circuit did not condition the government's interest in obtaining DNA information on the seriousness of the convictions, nor make any distinction between the government's interest in DNA information on violent felons versus DNA information for non-violent felons. Accordingly, the distinction is of no significance in the present case.

to use for law enforcement purposes. Both penalize the unauthorized disclosure or use of the DNA records. Finally, both require that an individual's record be expunged if his conviction is reversed. Accordingly, as in *Nicholas,* applying the balancing test to the federal DNA Act, the government interest in creating a DNA index outweighs the minimal privacy interests of probationers and prisoners in their DNA sample.

CONCLUSION

For the reasons set forth above, I hold that the DNA Act is constitutional and that accordingly the relief requested by the defendant is denied. Defendant is hereby directed to present himself for a blood draw by qualified persons at a time and place to be specified in writing by the probation department for use solely pursuant to the DNA Act.

The Clerk is directed to furnish a filed copy of the within to all parties and to the Magistrate.

SO ORDERED.

Dated :   Brooklyn, New York
          April 26, 2006

          By: <u>/s/ Charles P. Sifton (electronically signed)</u>
              United States District Judge